UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NATHAN NEVINS,

                         Petitioner,             **DECISION AND ORDER**

      -vs-                               **No. 07-CV-00161(VEB)**

MICHAEL GIAMBRUNO,

                         Respondent.

_____

## I.      Introduction

*Pro se* petitioner Nathan Nevins ("Nevins" or "petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that his 2004 state-court conviction for drug-related offenses was unconstitutionally obtained. (Docket No. 1). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to disposition of this matter by a magistrate judge.

## II.      Factual Background and Procedural History

The conviction here at issue was entered on January 28, 2004, in Erie County Court (DiTullio, J.). By Erie County Indictment No. 2002-1314-001, Nevins was charged with two counts of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16(1), (12), Resisting Arrest (N.Y. Penal Law § 205.30), Criminal Mischief in the Fourth Degree (N.Y. Penal Law § 145.00(3)), Vehicle and Traffic Law § 1129(c)(3) and Vehicle and Traffic Law § 1172(a).

Specifically, the indictment alleged that Nevins "on or about the 22nd day of May, 2002 . . . knowingly and unlawfully possessed cocaine . . . with an aggregate weight of one-half (½) ounce or more." Buffalo Police Officers Jerry Guilian and José Colon were on patrol on the

afternoon of May 22, 2002, when their attention was drawn to a grey, four-door Pontiac on Howard and Emslie Streets. Nevins was in the driver's seat. According to the officers, he was not wearing a seat belt. When Nevins pulled in front of the police car on Emslie and turned left on Oneida, Guilian activated his siren and attempted to pull his vehicle over. At that point, petitioner pulled over momentarily. The officers were half-way to the Pontiac when Nevins "sped away." T.306.[1]

As the officers followed Nevins' car down Oneida Street, Guilian saw Nevins throw a "plastic bag with a whitish yellow clay like substance" out of the driver's side window of his car. T.306-07. The bag "hit the asphalt, bounced on to the grass and landed next to a utility pole." T.309. The Pontiac driven by Nevins was about 30 feet in front of Guilian at the time he observed the bag fly out the window, and nothing was obstructing his view. T.308. Guilian said that all the way down Oneida Street, petitioner continued to throw drugs out the window. T.309. When he got to Oneida and Smith, petitioner ran stop sign, turning left onto Smith and left again onto Howard. T.310.

During the chase, Guilian kept petitioner's car in sight. T.311. At the intersection of Broadway and Herman, other police cars joined the pursuit. Officer John Simonian positioned his car to the left of petitioner's car while two other police cars placed themselves in front of and behind the Pontiac. T.475. One car was able to block Nevins' path. T.313. Nevins attempted a U-turn, struck a police car, and skidded into Simonian's parked car, which sustained damage to the right front bumper cover, the right marker light, and the front fender, in the amount of $570. T.500, 502.

---

[1]     Citations to "T.__" refer to the trial transcript.

As Guilian approached Nevins' car he noted that Nevins was the sole occupant. T.318, 364. After Nevins was arrested, a search of the vehicle yielded $675 in cash. Guilian then returned to Oneida Street where he had seen petitioner throwing bags out the window. Near the utility pole, Guilian found a sandwich baggie containing five, individually packaged "eight balls" of cocaine. T.330.

An off-duty New York State Trooper, Clyde Bohanna, happened to be in the driveway of his home on 64 Oneida Street on May 22nd and observed the police chasing Nevins. As Bohanna was taking packages out his car, his attention was drawn to Oneida and Emslie, where a police car with its overhead lights on had pulled over a vehicle. T.371-72. Bohanna then heard the screech of tires as both cars came down Oneida towards him. T.372. Bohanna saw a hand reach out of the driver's side window of the car under pursuit. An item was thrown from the car; it bounced on the ground in front of his house and landed by the curb in front of his neighbor's house at 70 Oneida. T.373, 375. Bohanna saw both cars then go through the stop sign at Smith and Oneida. T.374, 377.

Bohanna described the item discarded by the driver of the Pontiac as a "yellow/brown colored solid substance," wrapped in plastic Saran wrap. T.373, 375. One of the packages had opened upon striking the ground and had broken into several smaller pieces. The remaining two packages were intact. T.373. Buffalo Police Officers David Cieply and Robert Sheridan recovered several "small white rocks" near the curb. T.402-03, 417. Forensic chemical analysis revealed that the substance was cocaine base and that the combined weight of the three packages was 26.498 grams (0.934 ounces). T.524-26.

The defense presented three witnesses. JoAnne Lott was on her porch at 238 Emslie

Street on May 22nd when Nevins drove past her house, waving as he went by. T.553, 555, 557. Belinda Jones, petitioner's cousin, lived next door to Lott and was sitting with Lott on the porch. T.561, 555. Lott testified that she "thought" she saw someone in the rear driver's side seat of Nevins' car. T.557, 580. Seconds later, Lott said, a police car drove by. It did not have its siren or lights activated, and it did not appear to be chasing Nevins' car. T.557. Lott did not observe Nevins throw anything from his car. T.579.

Defense witness Annie Smith was walking down Smith Street on May 22nd when she heard the "screech" of a car coming down Oneida. T.588. Smith said that the car was not going fast, however. She did see it go through the stop sign at Oneida and Smith and turn left onto Smith. Smith saw a man jump out of the car and run through a nearby field. T.588. Smith did not observe any police cars in the area where she saw the man jump out of the car. T.590.

Angela Smith, a friend of petitioner's since childhood, was on her porch at 11 Oneida when petitioner drove by on May 22nd. Angela said that Nevins had a passenger in the backseat of his car. Angela recognized the passenger but refused to reveal his name. T.633. Angela did not see anything being thrown from Nevins' car. Nor did she see Nevins' car make any stops between Howard and Oneida. T.663, 674. Although she observed a police car about half a block behind Nevins' car, it did not have its siren or lights on. T.659-60.

Stanley Roberts, petitioner's mechanic, was a "good friend" of petitioner's. He had last serviced Nevins' car in February or March 2002, at which time he discovered that the door lock on the front passenger-side door was frozen, preventing the door from being opened. T.679-83.

Alberta Hooker, who did not know Nevins, was on her front porch at 68 Herman when she saw a car drive by. T.685-86. About half a block away, Hooker saw a police car with its

lights and siren activated, but she did not think it was chasing petitioner. T.687. Hooker went inside her house and when she came back out, she saw that the police had surrounded petitioner's car and that he was standing outside the car. T.687.

Anthony Moore, who knew petitioner from the neighborhood, testified for the defense that he had been walking up Emslie on May 22nd and had "flagged" petitioner down. Nevins pulled over and Moore got into the backseat behind Nevins because he knew that the front passenger's-side door was broken. T.609-10. As Nevins turned left from Emslie onto Oneida, Moore observed a police car behind them. T.611. Then, at Lord at Bond streets, Moore threw some drugs out of the driver's-side window and jumped out of the car as Nevins turned onto Smith. T.611. Moore did not come forward earlier because he believed that "nothing would come of it and he wanted to see what would happen." T.612. Moore recalled that he agreed to give a statement because the drugs were his and he threw them out the car window. T.612. Moore acknowledged that he knew he could be criminally charged based on the testimony he provided at Nevins' trial. T.612.

On cross-examination, Moore testified that when he had gotten into Nevins' car, he (Moore) had three "eight balls" of crack cocaine in various sizes in a baggie which was not fastened or tied. T.614, 619-20. When he turned his head to look through the rear window of Nevins' car, and first saw the police car, it did not have its lights or siren on. T.627, 632. Moore jumped out of Nevins' car when it stopped at Smith and Oneida. According to Moore, the police did not pull petitioner over. T.628, 631-33.

In charging the jury under the first count of the indictment, the trial court stated, "Possess means to have physical possession or otherwise to exercise dominion and control over tangible

property." T.794. Defense counsel did not object to this aspect of the charge. T.809. On the

second day of deliberations, the jury sent the court a note (Court Exhibit 7), requesting

"clarification of the fact that possession consists of knowingly having contraband in a vehicle, or

does it necessarily have to be on the person owned [sic] by the driver." T.830. The trial judge

consulted with both attorneys, and it was agreed that the judge would ask the jury if their

question was either (1) "How can a person possess contraband generally, whether that being on

the person or constructively?" or (2) "Is a person responsible for possession of another that

happens to be in the car?" T.830.  The trial judge then advised counsel that if the jury answered

in the affirmative to question one, she would read them the constructive possession charge.

T.831. Defense counsel objected, arguing that Nevins had not been indicted on a constructive

possession theory, and that he had never been afforded notice that he was required to defend a

constructive possession case. T.831.  (In the People's Bill of Particulars, it was stated that

"defendant acted as the principal in this case, and did not have an accomplice.") The prosecution

pointed out that the defense had created the discrepancy between the factual allegation set forth

in the indictment and the proof at trial.

When the jury was called down to the courtroom, the trial posed the two questions, as set

forth in the preceding paragraph. The jury foreperson informed her that the jury wanted to know

if "a person is responsible for the possession of another?" T.835. With both attorneys' approval,

the trial court told the jury that "the defendant is not responsible for any contraband that may

have been possessed by another person who may have been in the car." T.838. Another jury note

(Court Exhibit 10) indicated that the jury wanted the court to read them the portion of the charge

on possession "which was more toward personal possession and not responsibility of

possession." T.839-40. Following this exchange the trial court read the jury the constructive

possession charge contained in New York's Patter Criminal Jury Instructions (NY CJI2d, Art.

220, p.1155).[2] At 11:50 a.m., these instructions concluded. The next court event occurred when,

at 1:37 p.m., the jury sent a note indicating that they had reached a verdict. T.841.

The jury's verdict convicted Nevins of criminal possession of a controlled substance,

criminal mischief and both violations of the Vehicle and Traffic Law, and acquitted him of the

remaining charges. Nevins was sentenced as a second felony offender to a term of imprisonment

of four to eight years on the drug possession charge, one year on the criminal 4 mischief and a

conditional discharge on each of the Vehicle and Traffic violations. The sentences were ordered

to be served concurrently.

On appeal, Nevins raised several arguments, two of which are raised here as grounds for

habeas relief: (1) the trial court's supplemental instructions to the jury concerning "constructive

possession" amended the indictment by adding a *de facto* accomplice liability theory, and

reversal of his conviction is required since it is unknown which of the two possession theories

the jury relied on in convicting him; and (2) the verdict concerning the criminal mischief charge

was not supported by legally sufficient evidence. The Appellate Division, Fourth Department, of

New York State Supreme Court, unanimously affirmed the conviction. *People v. Nevins*, 16

A.D.3d 1046 (App. Div. 4th Dept. 2005). However, the Appellate Division did agree that the

"County Court erred in issuing a supplemental instruction to the jury on constructive

---

[2]        "Second, a person may exercise dominion and control over property not in his physical possession.
A person who  *3 exercises dominion or control over property not in his physical possession is said to have that
property in his constructive possession. Under our law, a person has tangible property in his constructive possession
when that person exercises a level of control over the area in which the property is found or over the person from
whom the property seized sufficient to give him the ability to use or dispose of the property." T.840-41.

possession." *Id.* at 1047. The Appellate Division did not agree with trial counsel's argument that the instruction constituted a change in the theory of criminal liability on the possession count charged in the indictment, but it did conclude that under either the prosecution's theory or the defense theory of the case, only *one* person physically possessed the cocaine and threw it from the window of the vehicle. *Id.* (citations and quotation omitted) (emphasis added).[3] Therefore, there was "no view of the evidence from which a jury could find that defendant exercised dominion and control over the cocaine *without* physically possessing it[.]" *Id.* (emphasis added).[4] However, the Appellate Division found, the error was harmless beyond a reasonable doubt. *Id.* (citing *People v. Crimmins*, 36 N.Y.2d 230, 241-42). This was because the trial court "explicitly instructed the jury that defendant could not be held responsible for criminal possession of a controlled substance if the drugs were, in fact, possessed by a second person allegedly in the car, and there is no significant probability that defendant otherwise would have been acquitted of that charge." *Id.*

With regard to Nevins' contention that the evidence was legally insufficient to support the conviction of criminal mischief, the Appellate Division "conclude[d] that defendant failed to

---

[3]       "The People's theory at trial was that defendant was the sole occupant of the vehicle during the events giving rise to the charges. Defendant, however, offered proof that there was a second person in the vehicle who possessed and discarded drugs before jumping from the moving vehicle." *Nevins*, 16 A.D.3d at 1047.

[4]       A person can possess property either actually or constructively.  Penal Law § 10.00(8) provides that " '[p]ossess' means to have physical possession or otherwise to exercise dominion or control over tangible property." N.Y. Penal Law § 10.00(8). "Constructive possession under New York law requires a showing that the defendant 'exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized.'" *Martinez v. Reynolds*, 888 F. Supp. 459, 463 (E.D.N.Y. 1995) (quoting *People v. Manini*, 79 N.Y.2d 561, 573 (N.Y. 1992)). Thus, a person is said to "constructively possess" property when he exercises dominion or control over it *other than* by physical possession of the property. *See, e.g.*, *People v. Reyes*, 126 A.D.2d 681, 510 N.Y.S.2d 909). Constructive possession can be proved by evidence establishing dominion or control. *See, e.g.*, *People v. Watson*, 56 N.Y.2d 632). Alternatively, in some cases, it may be proved by reliance on a statutory presumption which permits a jury to infer dominion or control from other proven facts. *See, e.g.*, N.Y. Penal Law §§ 220.25, 265.15.

move to dismiss that count of the indictment and therefore failed to preserve his present contention for our review[.]" *Id.* (citing *People v. Gray*, 86 N.Y.2d 10, 19) ( ). The court further concluded that the verdict on that count was not against the weight of the evidence. *Id.* (citing *People v. Bleakley*, 69 N.Y.2d 490, 495).

The New York Court of Appeals denied leave to appeal. *People v. Nevins*, 4 N.Y.3d 889 (N.Y. 2005). Nevins' petition for a writ of *certiorari* was denied by the United States Supreme Court. *Nevins v. New York*, 548 U.S. 911 (2000).

This timely habeas petition followed in which Nevins asserts two grounds for habeas relief. First, he contends that the trial court erred in instructing the jury on constructive possession. (Docket No. 1, "attached pages 2-4") Second, he argues that criminal mischief conviction was based upon legally insufficient evidence. (Docket No. 1, "attached pages 5-10"). Respondent answered the petition asserting the defense of procedural default with regard to the second claim. Respondent asserts that the second ground is procedurally defaulted because the Appellate Division relied upon an adequate and independent state ground in order to deny it. Respondent argues that both ground one and two are, in any event, without merit. (Docket Nos. 4 & 5).

The parties consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). (Docket No. 6).

For the reasons that follow, a writ of habeas corpus is denied and the petition is dismissed.

III.    **Legal Principles**

A.      **Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

B.      **Adequate and Independent State Ground Doctrine**

"[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990); *accord Harris v. Reed*, 489 U.S. at 264 n. 10 (stating that "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas"). In order to overcome a finding of procedural default, a habeas petitioner must show cause for the default and prejudice resulting therefrom, or that a "fundamental miscarriage of justice" will occur should the habeas court decline to hear his federal claim. *Harris v. Reed*, 489 U.S. at 262.

IV.    **Analysis of the Petition**

A.      **Ground One: The trial court's supplemental instructions to the jury on "constructive possession" denied petitioner his due process right to a fair trial.**

The Supreme Court has long recognized that a mere error of state law does not

automatically result in a denial of due process. *Estelle v. McGuire*, 502 U.S. 62 (1991); 28

U.S.C. § 2254(a). To obtain habeas relief under 28 U.S.C. § 2254 based on an alleged error in

the state court's instructions to the jury on a matter of state law, the petitioner must go beyond

demonstrating that there was an error of state law and establish that the error violated a right

guaranteed by federal constitutional law. *Cupp v Naughten*, 414 U.S. 141, 146 (1973); *Casillas v*

*Scully*, 769 F.2d 60, 63 (2d Cir. 1985); *Blazic v Henderson*, 900 F.2d 534, 540 (2d Cir. 1990). It

is not sufficient for habeas purposes that the challenged instruction was "undesirable, erroneous,

or even universally condemned." *Cupp*, 414 U.S. at 147. Rather, the petitioner must show that

"the ailing instruction by itself so infected the entire trial that the resulting conviction violates

due process." *Id.*; *accord Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

On appeal, Nevins argued that "as there is no legal distinction between constructive

possession of drugs and complicity in another's possession, the court below, through its

instructions [on constructive possession], added a *de facto* accomplice liability theory to the

People's case." Petitioner's Appellate Brief (quoting *People v. Sanchez*, 278 A.D.2d 889, 890

(App. Div. 4th Dept. 2000) (quotation marks omitted)).[5]

Respondent here does not appear to be contesting the Appellate Division's ruling that the

---

[5]     To the extent that Nevins relies upon affidavits by two jurors submitted to the appellate court on direct appeal, those documents cannot be properly considered. Here, Nevins' appellate counsel's reply brief referred to two juror affidavits through which both jurors averred, "'Prior to the Court['s] instructions on constructive possession we reasonably felt that the drugs belonged to the passenger and that the defendant was not guilty of possessing the drugs. That sworn to follow the instructions of the court, we applied the instructions given to us on constructive possession and found the defendant guilty of the aforementioned count. . . .'" Petitioner's Reply Brief, 2004 WL 5394552 (quoting Appellant's Appendix at pp. 102, 104). The law is well-established that "[a]ffidavits and statements by jurors may not ordinarily be used to impeach a verdict once the jury has been discharged unless extraneous influence has invaded the jury room." *Jacobson v. Henderson*, 765 F.2d 12, 15 (2d Cir. 1985) (citing *Stein v. New York*, 346 U.S. 156, 178 (1953); *McDonald and United States Fidelity and Guaranty Company v. Pless*, 238 U.S. 264, 267-69 (1915); *Mattox v. United States*, 146 U.S. 140, 148-49 (1892); *People v. De Lucia*, 20 N.Y.2d 275, 279 (N.Y. 1967); *United States ex rel. Owen v. McMann*, 435 F.2d 813, 819-20 (2d Cir.1970), *cert. denied*, 402 U.S. 906 (1971). There is no indication that any misconduct occurred during deliberations or that "extraneous influence invaded the jury room[,]" *Jacobson*, 765 F.2d at 15.

trial court's supplemental instruction on "constructive possession" was erroneous but rather focuses on the lack of harm to petitioner by the error. *See* Respondent's Memorandum of Law ("Resp't Mem.") at 2-6.

As an initial matter, I am not convinced that, assuming the trial court erred as a matter of state law, there was error of constitutional magnitude. *See Fernandez v. Breslin*, No. 00 CIV. 7931(LAK), 2001 WL 197034, at *2 (S.D.N.Y. Feb. 27, 2001). In *Fernandez*, the petitioner charged with third degree criminal possession of a weapon essentially argued that the trial court, by charging constructive possession, gave the jury an opportunity to convict him on a theory not considered by the grand jury and that he received insufficient notice that he was charged with constructive possession of the gun. The district court found no merit to the contention. First, New York's Penal Law § 10.00(8) defines "possess" as "to have physical possession or otherwise to exercise dominion or control over tangible property," and "[i]t long has been construed as embracing constructive possession." *Id.* (citing *Chalmers v. Mitchell*, 73 F.3d 1262, 1272 (2d Cir.), *cert. denied*, 519 U.S. 834 (1996); *People v. Hadley*, 67 A.D.2d 259, 262, 415 N.Y.S.2d 719, 721 (App. Div. 4th Dept.1979)). The district court found that, consequently, the indictment gave sufficient notice of the charge against petitioner Fernandez, and there was no basis to conclude that he may have been convicted on a theory that had not been submitted to the grand jury. *Id.* Thus, in *Fernandez*, habeas relief was denied because "the trial court did not err, at least in federal constitutional terms, in submitting the constructive possession theory to the jury." *Id.*[6]

---

[6]        *See also Unites States v. Santiago*, No. 03-1148, 2004 WL 2165377, 110 Fed. Appx. 161, 161 (2d Cir. Sept. 16, 2004) (unpublished opn.) (holding that jury instructions in prosecution for possession of a firearm by a felon, in which the prosecution presented only an actual possession theory, did not generate a substantial risk that the jury would be confused as to the standard applicable to actual possession or encouraged to imagine scenarios under

Even where error in a state trial court's jury instructions is found, reversal is not automatically warranted. *See*, *e.g.*, *Denti v. Commissioner of Corr. Srvs. of N.Y.*, 421 F. Supp. 557, 561 (S.D.N.Y. 1976) ("Even if we agreed with petitioner that the charge was confusing or erroneous, the error would not approach the magnitude sufficient to justify issuance of a writ in this proceeding.") (citing, *inter alia*, *Cupp v. Naughten*, 414 U.S. at 146-47). The Appellate Division, as noted above, concluded that there was error but that it was harmless. The Appellate Division relied on *People v. Crimmins* which sets forth essentially the same harmless error as used by federal courts on direct review of federal convictions. *See Chapman v. California*, 386 U.S. 18, 24 (1967) (on direct review, an error may be overlooked only if it was "harmless beyond a reasonable doubt"). In *Fry v. Pliler*, 127 S.Ct. 2321 (2007), the Supreme Court clarified which harmless-error standard should be applied on collateral review in the wake of AEDPA's modifications to the habeas statute, holding that federal courts "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial injurious effect' standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*." *Fry*, 127 S. Ct. at 2328. Under *Brecht*, an error is harmless unless it resulted in "actual prejudice," that is, unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *accord Fry v. Pliler*, 127 S. Ct. at 2328.

---

which defendant might be guilty of constructive possession, even though an instruction appeared to conflate actual and constructive possession and, by stating that the jury need not find that the defendant had "actual possession," suggested that another kind of possession, such as constructive possession, would be sufficient; jury was instructed that, if it found the defendant had actual possession of the firearm, even if it also found that he relinquished physical possession of the firearm by discarding the weapon, the jury could find that the government had proven possession).

I do not find that the error complained of resulted in "actual prejudice" to Nevins such that it "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Respondent persuasively argues that the record does not support petitioner's assertion that the constructive possession charge added a *de facto* accomplice liability theory to the People's case, raising the risk that the jury convicted petitioner on an unindicted charge. *Id.* at 5. Rather, it appears that the jury did not convict petitioner under a constructive possession theory. They asked, and were told by the trial judge that petitioner could not be held responsible for the contraband that may have been possessed by another passenger in the car (i.e., Moore). Respondent points out that the jury *was* properly charged that a  person "may have physical possession of it by holding it in his hands, or by carrying it in or on his body or person . . . ." *Id.* at 6. Thus, respondent states, the jury evidently credited the testimony by prosecution witnesses that petitioner, and not Moore, was the person throwing the drugs out of the car window, and convicted him of actually, physically possessing the drugs. Under the circumstances present here, the infirm jury instruction did not "'so infect the entire trial that the resulting conviction violates due process[,]'" *Murden v. Artuz*, 253 F. Supp.2d 376, 388 (E.D.N.Y. 2001) (quoting *Cupp*, 414 U.S. at 147). Accordingly, habeas relief is not warranted based upon Ground One of the petition.

**B.      Ground Two: The convictions for third degree possession of a controlled substance and criminal mischief were not supported by  legally sufficient evidence.**

Here, as he did on direct appeal, Nevins argues that the verdicts convicting him of third degree criminal possession of a controlled substance and criminal mischief were not supported by legally sufficient evidence. The Appellate Division held that "the conviction of criminal

possession of a controlled substance in the third degree[7] is supported by legally sufficient evidence and that the verdict on that count of the indictment is not against the weight of the evidence[.]" *Nevins*, 16 A.D.3d at 1046 (citing *People v. Bleakley*, 69 N.Y.2d at 495). However, the Appellate Division held, "[t]o the extent defendant contends that the evidence is legally insufficient to support the conviction of criminal mischief,[8] we conclude that defendant failed to move to dismiss that count of the indictment and therefore failed to preserve his present contention for our review[,]" *id.* (citing *People v. Gray*, 86 N.Y.2d 10, 19), and the "verdict on that count is not against the weight of the evidence[,]" *id.* (citing *Bleakley*, 69 N.Y.2d at 495).

Respondent concedes that the Appellate Division adjudicated on the merits Nevins' claim as to the sufficiency of the evidence underlying the controlled substance conviction but asserts that Nevins has procedurally defaulted his claim as to the sufficiency of the criminal mischief conviction because the Appellate Division relied upon an adequate and independent state ground to dismiss it. *See* Resp't Mem. at 7-8.

**1.    Petitioner has procedurally defaulted on his insufficiency claim regarding the criminal mischief conviction.**

I agree with respondent that the Appellate Division's decision regarding the criminal mischief claim rested upon a state law ground that was "independent of the federal question and

---

[7]         "A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses: 12. one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more; . . . Criminal possession of a controlled substance in the third degree is a class B felony." N.Y. Penal Law § 220.16(12).

[8]         "A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she: 3. Recklessly damages property of another person in an amount exceeding two hundred fifty dollars . . . . Criminal mischief in the fourth degree is a class A misdemeanor." N.Y. Penal Law § 145.00(3).

adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *accord Fama v. Commissioner of Corr. Srvs.*, 235 F.3d 804, 809 (2d Cir. 2000). "[A] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999). Further, "[t]here are . . . exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). The Supreme Court identified in *Lee v. Kemna* three factors that the Second Circuit has described as "guideposts" to be used in evaluating "the state interest in a procedural rule against the circumstances of a particular case": (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto*, 331 F.3d at 240 (internal quotation marks omitted).

Because the procedural bar at issue in Nevins' case is a "contemporaneous objection" rule, the first *Cotto* guidepost "is less applicable . . . because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court." *Cotto*, 331 F.3d at 242. This Court cannot determine whether "perfect compliance" with the contemporaneous objection rule would have changed the trial court's ruling because the trial court did not have a chance to make any determination about the legal sufficiency of the evidence proffered to support the criminal mischief conviction. In keeping with the Second Circuit's teachings, I

accordingly find the first factor to be neutral.

As to the second *Cotto* guidepost, the Second Circuit has recently held that "there can be no doubt that New York case law requires that a sufficiency objection be specifically made to the trial court in the form of a motion to dismiss at trial." *Donaldson v. Ercole*, No. 06-5781-pr, 2009 WL 82716, at *1 (2d Cir. Jan. 14, 2009) (unpublished opn.) (citing *People v. Hines*, 762 N.E.2d 329, 333 (N.Y. 2001) ("[W]e have repeatedly held that an indictment may be dismissed due to insufficient evidence only where the sufficiency issues pursued on appeal were preserved by a motion to dismiss at trial. Indeed, even where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be specifically directed at the alleged error.") (citations and internal quotation marks omitted in original)). This factor weighs in respondent's favor.

The third, and last, *Cotto* factor is "whether petitioner had substantially complied with the rule given the realities of trial," *Cotto*, 331 F.3d at 240. This also weighs in favor of respondent because there an insufficiency argument was not raised in the state trial court regarding the criminal mischief count. Thus, "there can be no substantial compliance with a contemporaneous objection rule when no sufficiency objection was even implied in the trial court." *Donaldson v. Ercole,* 2009 WL 82716, at *3.

Because of the independent and adequate state procedural bar, I cannot review the sufficiency of the evidence supporting the misdemeanor criminal mischief conviction unless Nevins can show cause and prejudice, or that a fundamental miscarriage of justice would occur should this Court decline to consider the claim. Nevins did not submit and reply brief and has not adduced cause, prejudice, or facts to support the miscarriage of justice exception. There being no

basis on this record to excuse the procedural default, I will dismiss the claim without reaching

the merits.

### 2.     The claim of legal insufficiency as to the criminal possession conviction does not warrant habeas relief.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a

criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact

necessary to constitute the crime with which he is charged.'"*Jackson v. Virginia*, 443 U.S. 307,

315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). However, "a properly instructed

jury may occasionally convict even when it can be said that no rational trier of fact could find

guilt beyond a reasonable doubt. . . ." *Jackson v. Virginia*, 443 U.S. at 317. Accordingly, "in a

challenge to a state criminal conviction brought under 28 U.S.C. § 2254–if the settled procedural

prerequisites for such a claim have otherwise been satisfied–the applicant is entitled to habeas

corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of

fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. The legal sufficiency

standard places a "very heavy burden" on the applicant. *United States v. Carson*, 702 F.2d 351,

361 (2d Cir.1983) (citations omitted), *cert. denied*, 462 U.S. 1108 (1983). The reviewing court

"must view the evidence in the light most favorable to the government, and construe all

permissible inferences in its favor." *Id.* The relevant inquiry is limited to asking "whether the

jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded

that the defendant was guilty beyond a reasonable doubt." *Id.*

The reviewing court is not to "ask itself whether it believes that the evidence at the trial

established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19. Rather, "the relevant

question is whether, after viewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (noting that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

"In considering a petition for a writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime." *Green v. Abrams*, 984 F.2d 41, 44-45 (2d Cir.1993); *see also Jackson*, 443 U.S. at 324 n.16. Here, Nevins was charged with one count of criminal possession of a controlled substance in the third degree, for allegedly 'knowingly and unlawfully possess[ing] one or more preparation, compounds, mixtures or substances of an aggregate weight of one half ounce or more containing a narcotic drug." N.Y. PENAL LAW § 220.16(12). The inferences to be drawn from the prosecution's proof logically support the conclusion that Nevins possessed the packages of cocaine base with the intent to sell them, based on the evidence that Office Guilian saw Nevins throw the drugs out of the window, the cocaine base was separately packaged, and Nevins' car contained $765 in small bills when he was arrested.  In sum, I cannot find that Nevins has proven that no rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found all of the essential elements of the crime charged beyond a reasonable doubt.

The crux of Nevins' challenge to the sufficiency of the evidence are the alleged inconsistencies in the testimony of the police officers, and contradictions between police witness testimony and that offered by defense witness Moore, who claimed responsibility for possessing drugs. However, under the *Jackson* standard for reviewing evidentiary sufficiency, "the

assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995); *accord Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal."); *Glasser v. United States*, 315 U.S. 60, 80 (1942) ("It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."), *superseded on other grounds by statute*, *in part*, *as recognized in Bourjaily v. United States*, 483 U.S. 171, 181 (1987). This case, like so many others, boiled down to whether the jury chose to believe the state's witnesses or the defense witnesses. *See Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981). As the Second Circuit and the Supreme Court have repeatedly instructed, this Court may not second-guess the jury's credibility determinations. *United States v. Vasquez*, 267 F.3d 79 (2d Cir. 2001) ("The jury chose to believe the witnesses' testimony despite any inconsistencies. We will defer to the jury's assessment of credibility.") (citing *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998) ("Where there is conflicting testimony at trial, we defer to the jury's resolution of the witnesses' credibility.") (citing *United States v. Stratton*, 779 F.2d 820, 828 (2d Cir. 1985)). This Court cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence. Accordingly, this claim does not provide a basis for habeas relief.

## IV.    Conclusion

Petitioner Nathan Nevins' request for a writ of habeas corpus is denied. Because Nevins has not made a substantial showing of the denial of a constitutional right, a certificate of

appealability will not issue. 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: January 29, 2009
        Buffalo, New York.